Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| EDWIN SANTINI APONTE<br><br>Recurrido<br><br>v.<br><br>IMPERIO AUTO CORP.<br><br>Recurrente | TA2026RA00158 | REVISIÓN JUDICIAL Procedente del Departamento de Asuntos del Consumidor, PONCE<br><br>Querella Núm.: PON-2025-0006257<br><br>Sobre: Compra Venta de Vehículos de Motor |
| --- | --- | --- |

Panel integrado por su presidenta la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Mateu Meléndez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de mayo de 2026.

El 9 de abril de 2026, Imperio Auto Corp. (en adelante, Imperio Auto o parte recurrente) compareció ante este Tribunal de Apelaciones mediante *Recurso de Revisión*. En este, nos solicita que revoquemos la *Resolución* emitida el 13 de febrero de 2026, por el Departamento de Asuntos del Consumidor (en adelante, DACo). Por virtud del aludido dictamen, el DACo declaró Ha Lugar la *Querella* que presentó el señor Edwin Santini Aponte (en adelante, señor Santini Aponte o recurrido) ante su consideración y, entre otras cosas, decretó la resolución del contrato de compraventa suscrito entre las partes.

Estudiado el legajo apelativo, y conforme al derecho que más adelante exponemos, **confirmamos** la determinación recurrida.

**-I-**

Conforme surge del expediente ante nos, el 22 de agosto de 2025, el señor Santini Aponte radicó una *Querella* ante el DACo por alegados defectos desconocidos en un vehículo de motor que adquirió de Imperio Auto. Subsiguientemente, el 27 de agosto de 2025, notificada por correo

ordinario el día 28, el DACo emitió *Notificacion de Querella* en la que informó a Imperio Auto de la presentación de la querella en su contra. También, le indicó que oportunamente se le notificaría la fecha en que se celebraría la vista administrativa y de su derecho a comparecer con representación legal. **Además, le advirtió** del plazo con el que contaba para contestar la querella **y sobre la consecuencia de no hacerlo dentro del término informado**.

La vista administrativa fue celebrada el 4 de diciembre de 2025. Surge de la resolución recurrida que a la misma compareció el recurrido, más no así la recurrente. Además de ello, conforme el dictamen recurrido establece, del expediente administrativo no surgía que Imperio Auto hubiese presentado excusa ni justificación por su incomparecencia. Tampoco que la notificación emitida para la audiencia hubiese sido devuelta por el sistema de correo, por lo que el DACo la presumió recibida, por lo que le anotó la rebeldía.[1]

Habiéndose celebrado la vista en ausencia de la parte recurrente, el 19 de diciembre de 2025, Imperio Auto compareció por primera vez en el caso de epígrafe mediante *Moción Asumiendo Representación Legal y Solicitando Notificación de Querella y Reseñalamiento de Vista*. En su escrito, aceptó haber recibido la notificación del señalamiento de vista, más indicó que por error involuntario la misma se confundió con otros documentos y no fue remitida a su abogada hasta luego de la fecha de la audiencia pautada. Asimismo, solicitó copia de la querella instada y la celebración de una nueva vista administrativa.

Pendiente lo anterior, el 13 de febrero de 2026, el DACo notificó su *Resolución*. En su dictamen, realizó un recuento procesal del asunto, así como de la vista celebrada. Particularmente, como ya mencionamos, consignó la debida notificación del caso, la incomparecencia injustificada del recurrido y, consecuentemente, su anotación de rebeldía. También,

---

[1] *Véase, Resolución*, página 3 del Apéndice.

constató la evaluación de la prueba documental que obra en el expediente y el testimonio presentado por el recurrido durante la vista. Basándose en dicha evidencia, el DACo formuló las siguientes determinaciones de hechos:

a) El Sr. Edwin Santini de 82 años, se encontraba viendo en su celular unos anuncios y le apareció un anuncio de Imperio Auto, donde ofrecían para la venta un Volkswagen parecido a uno que había tenido.

b) El. Sr. Santini procedió a ir a Carolina para el concesionario Imperio Auto para ver el automóvil.

c) Una vez el Sr. Santini vio el vehículo se enamoró del mismo y ofreció $10,000.00 al vendedor por el vehículo Passat, ya que lo tenían anunciado en $14,000.00.

d) El 2 de agosto de 2025 Edwin Santini Aponte (en adelante parte querellante) adquirió un vehículo de motor usado marca Volkswagen Passat SE color gris obscuro del año 2016 tablilla IQG962 en el concesionario Imperio Auto Corp. (en adelante parte o concesionario querellado). El vehículo tenía alrededor de 75,000 millas corridas.

e) El precio de venta del vehículo usado que pago el querellante a la parte querellada fue diez mil dólares ($10,000.00).

f) En la orden de compra el vendedor marco en la orden de compra, que el precio era sin garantía ("as is").

g) El querellante declaró que es un jubilado de la Autoridad de Energía Eléctrica y que al presente tiene problemas de salud, ya que tiene problemas de movimiento.

h) El querellante declaró que le mostraron el vehículo en el concesionario y lo prendieron, pero no lo guiaron en ningún momento.

i) El querellante no probó el vehículo, solo lo vio por dentro y se veía aceptable.

j) **Conforme declaro el querellante, el vendedor le indicó que el vehículo se encontraba en condiciones óptimas y que había unas cositas que le iban a poner (aros).**

k) El querellante pago el vehículo, pero lo dejó en el concesionario. Luego contrato una grúa el 4 de agosto de 2025 para que el recogieran el vehículo en el concesionario querellado. El gruero le dejó el vehículo dentro de la marquesina del querellante en su residencia en Estancias del Golf en Ponce.

l) Luego de eso, el querellante se comunicó con un amigo de nombre Bernie para que viniera a verificar el vehículo. Una vez el Sr. Bernie prendió el vehículo se percató que el mismo tenía las luces del antilock prendidas. Ante esto Bernie le recomendó hacerle una prueba a un mecánico.

m) El querellante decidió llevar el vehículo a revisar a un mecánico en Villa Flores (Lugo Europarts Inc.) y le entregaron un

*Diagnostic Reporte* sobre los problemas que presentaba el vehículo. Además, le entregaron una cotización o estimado sobre los arreglos que necesita el vehículo los cuales incluye: ABS SENSOR REAR RH, ABS MODULE, PARK BRAKE HANDLE, BRAKE FLUID DOT 4 PENTO 1LT, LABOR por la cantidad de $4,399.795.

n) El querellante también solicitó al concesionario Volkswagen en Ponce un estimado de reparación del vehículo y el mismo salía en el sistema el vehículo a nombre de Alfredo Santana y el estimado asciende a $4,803.53.

**o)** El querellante decidió llamar al concesionario querellado y habló con el vendedor Sr. Ríos y le hizo saber que el vehículo no estaba en óptimas condiciones como le habían indicado, ya que las reparaciones que necesitaba el vehículo alcanzaban casi los $5,000.00. **El vendedor le indicó que el vehículo no tenía garantía y que esto se lo había dicho desde la venta.**

p) El querellante declaró que el vendedor le indicó que hablaría con el dueño y lo llamaría y que eso nunca ocurrió.

q) El querellante declaró que no le entregaron documentos del vehículo, ni de garantía, ni mantenimientos ni nada al momento de la compraventa.

r) El querellante declaró que no ha podido hacer uso del vehículo para nada. No ha podido hacer uso y disfrute del vehículo, ya que necesita una reparación. El querellante solo uso el vehículo para llevarlo a evaluar.

s) A pesar de que el querellante pagó cash el vehículo, el concesionario no le ha dado la licencia ni han realizado el traspaso ni le han entregado el título del vehículo. El querellante solo tiene una copia de la licencia provisional del vehículo.

t) El querellante declaró que ha tenido que pagar por grúa ($150.00), estimados ($60.00) y que el vehículo aparece con multas de tránsito.

u) El querellante declaró que toda esta situación le ha afectado en su vida personal, que casi no duerme pensando en toda esta situación con el vehículo, que él siempre ha actuado de buena fe y el concesionario nunca lo llamó, ni le dieron importancia, a pesar de ser una persona mayor.

v) El querellante declaró que sufrió un ataque al corazón y que toda esta situación lo tiene mal y teme que le afecte más su salud. Que toda esta situación ha sido caótica para él.

w) La solicitud del querellante es devolución del dinero pagado, los $10,000.00 que pagó por la unidad, ya que le indicaron que estaba en óptimas condiciones y eso no fue cierto. Que ya no le interesa el vehículo, que recojan el vehículo en su residencia.

En virtud de tales determinaciones de hechos, así como las conclusiones de derecho allí consignadas y la aplicación de éstas, el DACo decretó la resolución del contrato suscrito entre las partes ante el

incumplimiento del recurrente con su deber de responder al reparo del vehículo durante el tiempo de vigencia en garantía. Al así proceder, ordenó a Imperio Auto el pago de $10,000.00 en atención al incumplimiento contractual, así como una cuantía de $400.00 en concepto de angustias mentales para una suma ascendente a $10,400.00 a favor del señor Santini Aponte.

En desacuerdo con el referido dictamen, el 19 de febrero de 2026, el recurrente presentó una solicitud de reconsideración. En suma, reiteró el defecto sobre la notificación de la querella y la negligencia inadvertida para comparecer a la vista. Por ello, suplicó del foro adjudicador, el relevo de la resolución al amparo de las Regla 49.2(a) de Procedimiento Civil, 32 LPRA Ap. V, R.49.2(a), por tratarse de un error excusable.

Irresoluta la petición, Imperio Auto instó una segunda reconsideración. En esta ocasión, cuestionó los méritos de la resolución y le imputó al DACO la comisión de tres errores. Primero, arguyó que era improcedente la acción redhibitoria al no otorgarle oportunidad real al recurrente de corregir el defecto. De igual forma, indicó que incidió el foro administrativo al determinar que existían daños ocultos en ausencia de inspección previa. Finalmente, señaló que la edad avanzada del recurrido no era razón propicia para una determinación en daños.

Ante la inatención del recurso y aun en desacuerdo, el 6 de abril de 2026, el recurrente acudió ante esta Curia y señaló la comisión de los siguientes errores:

> PRIMER ERROR: ERRÓ EL DACO AL DAR POR VÁLIDA LA NOTIFICACIÓN DE LA VISTA, NEGAR EL RELEVO DE REBELDÍA Y ADJUDICAR EN AUSENCIA, SIN CELEBRAR UNA VISTA EN LOS MÉRITOS NI ATENDER LA MOCIÓN PRESENTADA OPORTUNAMENTE, EN VIOLACIÓN AL DEBIDO PROCESO DE LEY Y ANTE NEGLIGENCIA EXCUSABLE.
>
> SEGUNDO ERROR: ERRÓ EL DACO AL CONCLUIR QUE EXISTÍAN VICIOS OCULTOS Y ORDENAR LA RESOLUCIÓN DEL CONTRATO, CUANDO SUS PROPIAS DETERMINACIONES DE HECHOS NO SATISFACEN LOS ELEMENTOS LEGALES APLICABLES, Y SIN EVIDENCIA

SUSTANCIAL (INCLUYENDO EVIDENCIA TÉCNICA) EN EL EXPEDIENTE ADMINISTRATIVO QUE SOSTENGA ESE REMEDIO EXTRAORDINARIO

TERCER ERROR: ERRÓ EL DACO AL CONCEDER $400 POR "MOLESTIAS Y CONTRARIEDADES" SIN DETERMINACIONES DE HECHOS ESPECÍFICAS, SIN PRUEBA EN EL EXPEDEINTE, ADMINISTRATIVO Y SIN ESTABLECER LOS ELEMENTOS DE DAÑOS (DAÑO REAL, CONDUCTA IMPUTABLE Y NEXO CAUSAL) ATRIBUIBLES A LA PARTE QUERELLADA.

Habiéndosele advertido al recurrido de la necesidad de comparecer dentro del plazo reglamentario y transcurrido el término sin este haber presentado su posición, procedemos a resolver sin el beneficio de su comparecencia.

**-II-**

*A.*

La competencia de este Tribunal de Apelaciones para revisar las actuaciones administrativas está contemplada en la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley 38-2017, 3 LPRA Sec. 9601, *et seq.* A tales efectos, la Sección 4.1 de la LPAU dispone sobre la revisión judicial aplicable a aquellas órdenes, resoluciones y providencias adjudicativas finales dictadas por agencias, las que serán revisadas por el Tribunal de Apelaciones mediante Recurso de Revisión. 3 LPRA Sec. 9671. Sobre el alcance de esta revisión, la Sección 4.5 de la LPAU establece que las determinaciones de hechos de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente, mientras que las conclusiones de derecho serán revisables en todos sus aspectos.[2]

En nuestro ordenamiento jurídico ha sido la norma general por años que las conclusiones e interpretaciones de las agencias merecen gran consideración y respeto y que su revisión judicial se limita a determinar si estas actuaron arbitraria o ilegalmente. Ahora bien, recientemente nuestro Tribunal Supremo, en consideración del lenguaje específico de la Sección

---

[2] 3 LPRA Sec. 9675.

4.5 de la LPAU, adoptó la normativa establecida en *Loper Bright Enterprises v. Raimondo*, 603 US 369 (2024). Así pues, concluyó que la interpretación de las leyes es una tarea inherente de los tribunales. En virtud de ello, enunció que, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos y no guiarse por la deferencia automática que se aplica a estas decisiones. *Vázquez v. Consejo de Titulares*, 2025 TSPR 56, 215 DPR _____.

En el citado caso el Tribunal Supremo de Puerto Rico expresó que:

[A]l ejercitar dicho criterio, los tribunales pueden apoyarse, como lo han hecho desde el inicio, en las interpretaciones de las agencias. . . . Sin embargo, tales interpretaciones constituyen un acervo de experiencias y criterios informados a los cuales los tribunales y los litigantes bien podrán recurrir a modo de guía de conformidad con la APA; y no avalar ciegamente, como se solía hacer en el pasado. *Íd.* (cita depurada).

En ese sentido, nuestro más alto foro enfatizó que "[…] los tribunales deben ejercer un juicio independiente al decidir si una agencia ha actuado dentro del marco de sus facultades estatutarias. Pero principalmente, contrario a la práctica de las pasadas décadas, los tribunales no tienen que darle deferencia a la interpretación de derecho que haga una agencia simplemente porque la ley es ambigua." (énfasis en el original)

No obstante, es importante destacar que en el citado caso nuestro más alto foro no modificó la evaluación y respetó las determinaciones de hechos alcanzadas por las agencias. Así pues, prevalece todavía la norma de que, para impugnar la razonabilidad de la determinación administrativa, es necesario que la parte recurrente señale la prueba en el récord que reduzca o menoscabe el peso de la evidencia que obra en el expediente administrativo. *Domínguez v. Caguas Expressway Motors*, 148 DPR 387, 397-398 (1999) (citando a *Hilton Hotels v. Junta Salario Mínimo*, 74 DPR 670, 686 (1953)). La misma debe ser suficiente como para que pueda descartarse en derecho la presunción de corrección de la determinación administrativa, no

pudiendo descansar en meras alegaciones. *Com. Vec. Pro-Mej., Inc. v. JP*, 147 DPR 750, 761 (1999). El criterio rector para examinar una decisión administrativa es la razonabilidad de la actuación de la agencia recurrida. *González Segarra et al. v. CFSE*, 188 DPR 252, 276 (2013).

Por lo tanto, si al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712 (2012) (citando a *Empresas Ferrer v. A.R.PE.*, 172 DPR 254, 264 (2007).

*B.*

La Ley Núm. 38-2017 conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, según enmendada, 3 LPRA sec. 9601 (LPAU), regula la anotación de rebeldía en procesos adjudicativos. En lo particular, la Sección 3.10 de la LPAU, establece que:

> Si una parte debidamente citada no comparece a la conferencia con antelación a la vista, o a cualquier otra etapa durante el procedimiento adjudicativo el funcionario que presida la misma podrá declararla en rebeldía y continuar el procedimiento sin su participación, pero notificará por escrito a dicha parte su determinación, los fundamentos para la misma y el recurso de revisión disponible. Sección 3.10 de la LPAU, *supra*.

Lo anterior, está forjado dentro del marco regulatorio que contemplan las Reglas de Procedimiento Civil. Aun cuando es hartamente reconocido que las reglas procesales no son de aplicabilidad en los procesos administrativos, estas resultan aplicables a los procedimientos ante las agencias cuando propicien una solución justa, rápida y económica. *Freyre Martínez v. Consejo de Titulares*, 2026 TSPR 20, 217 DPR ___.

En esa línea, nuestro ordenamiento jurídico ha reconocido la aplicación discrecional de la anotación de rebeldía como un método para disuadir a la parte que incurre en la dilación de los procesos como estrategia de litigio. Por ello, su imposición surge como sanción ante el incumplimiento con las órdenes judiciales. No obstante, "tal discreción no se sostiene ante el ejercicio burdo o injusto". *Íd.*, al citar a *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 590 (2011).

Por otro lado, es norma reiterada que la resolución en rebeldía tiene la consecuencia de que se estimen aceptadas todas las materias bien alegadas. En particular, aquellas que luego de una evaluación concienzuda, el tribunal considere correctamente alegadas por lo que existen elementos de la causa de acción que ameritan el remedio solicitado. Empero, los tribunales no somos meros autómatas, por lo que no garantiza una sentencia favorable al promovente de la acción, ni se admiten hechos incorrectamente alegados, así como conclusiones de derecho. *Mitsubishi Motor v. Lunor y otros*, 212 DPR 807, 825-826 (2023).

C.

Con el propósito de asegurar la solución justa, rápida y económica de las querellas presentada ante o por el DACo y a los fines de proveer un procedimiento uniforme para la adjudicación de estas, se aprobó el *Reglamento de Procedimientos Administrativos*, Reglamento Núm. 8034 del 13 de junio de 2011 (en adelante, Reglamento 8034). La Regla 8 del Reglamento 8034 regula lo concerniente a la notificación de querellas. Ateniente a lo que nos ocupa, la referida regla dispone como sigue:

> El Departamento notificará a todos los querellados la querella radicada en su contra. Esta notificación será un aviso escrito de que el querellado deberá contestar la querella en el término de veinte (20) días a partir de la notificación, advirtiendo además que de no recibirse la contestación a la querella en dicho término se le anotará la rebeldía. La notificación consistirá en copia de la querella y un aviso escrito […]

Destacamos que, en su inciso 8.2 de la mencionada regla comprende el método de notificación de la querella, permitiéndose esta por correo ordinario, como norma general, o cualquier otro medio que las partes dispongan, siempre que existan los recursos en el DACo. También será válida su presentación personal cuando las circunstancias así lo ameriten.

Por otro lado, la Regla 20 del Reglamento 8034 dispone sobre la celebración de vistas adjudicativas. En lo pertinente a la controversia de autos, la Regla 20.2 reza según transcribimos a continuación:

> El Departamento fijará la fecha y la notificará por escrito a las partes que será no antes de quince (15) días de dicha notificación, a menos que las partes pacten otra fecha, con la anuencia del Juez u Oficial Administrativo, Secretario, o Panel de Jueces que presida los procedimientos. Se le apercibirá al querellante que, si no comparece a la vista, el Departamento podrá ordenar la desestimación y archivo de la querella por abandono. Si el querellado no comparece se podrán eliminar sus alegaciones. El Departamento podrá también condenar al pago de honorarios de abogado o dictar cualquier otra orden que en Derecho proceda.

### D.

El contrato es el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones.[3] En este, las partes pueden acordar cualquier cláusula que no sea contraria a la ley, la moral o al orden público.[4] Los acuerdos establecidos en el contrato tendrán fuerza de ley entre las partes.[5] Estos pactos, se perfeccionan por el mero consentimiento y desde ese momento cada una de las partes está obligada a cumplir con lo expresamente pautado y sus consecuencias. 31 LPRA Sec. 9771; *Aponte Valentín v. Pfizer Pharmaceuticals, LLC.,* 208 DPR 263, 286 (2021).

Para que un contrato sea válido, deben concurrir tres elementos esenciales, a saber: (1) consentimiento de los contratantes; (2) un objeto cierto que sea material del contrato; y la causa de la obligación que se

---

[3] Artículo 1230 del Código Civil de Puerto Rico de 2020, 31 LPRA Sec. 9751.
[4] 31 LPRA Sec. 9753.
[5] 31 LPRA Sec. 9754. Véase, también *Hope Tucker v. Money Group, LLC*, 2026 TSPR 9, 217 DPR ___.

establezca. *Íd.*, a la pág. 284. El consentimiento prestado puede ser nulo cuando ha sido prestado por error, violencia, intimidación o dolo. *Bosques vs. Echevarría*, 162 DPR 830, 836 (2004). Ahora, es importante conocer que no todo tipo de dolo produce la nulidad del contrato. Así pues, el dolo incidental no invalida el negocio jurídico, pero su autor debe indemnizar el daño causado. 31 LPRA, Sec. 6213. Para que el dolo cause la nulidad del contrato, deberá ser grave[6] y no puede haber sido empleado por las dos partes contratantes. *Bosques vs. Echevarría*, supra.

De otra parte, y a los fines de la controversia que hoy atendemos, también es significativo considerar que según dispone nuestro Código Civil, quien transfiere un bien a título oneroso responde por evicción y por los defectos ocultos del bien, aunque los ignorase.[7] Igual trascendencia tiene recordar que el vicio redhibitorio es aquel defecto oculto en el bien transmitido a título oneroso y existente al tiempo de la adquisición, que hace impropio al bien para su destino o disminuye de tal modo su utilidad que de haberlo conocido el adquiriendo no lo habría adquirido o habría dado menos por él.[8] En aquellos casos en los que, en la transmisión de un bien mediante un contrato de compraventa, la parte vendedora se obliga, entre otras cosas, a garantizar al comprador que el bien vendido tiene las cualidades prometidas y que está libre de defectos que disminuyen o destruyen su valor o la aptitud para su uso ordinario o convenido.[9]

*E.*

La Ley Núm. 7 del 24 de septiembre de 1979, 10 LPRA sec. 2051, *et seq.* (en adelante, Ley Núm. 7), conocida como Ley de Garantías de Vehículos de Motor fue creada con el propósito de "velar porque los intereses de los consumidores sean salvaguardados frente a los intereses del

---

[6] Dolo grave, es "la acción u omisión intencional por la cual una parte o un tercero inducen a otra parte a otorgar un negocio jurídico que de otra manera no hubiera realizado. 31 LPRA Sec. 6211.
[7] 31 LPRA Sec. 9851.
[8] 31 LPRA Sec. 9871.
[9] 31 LPRA Sec. 9991.

manufacturero y el distribuidor o vendedor". Por virtud de dicha Ley, el Reglamento Núm. 7159 del 1 de junio de 2006, según enmendado, conocido como el *Reglamento de Garantías de Vehículos de Motor* (en adelante, Reglamento 7159), fue promulgado con el objetivo de "proteger adecuadamente a los consumidores y sus inversiones en la adquisición de vehículos de motor". A su vez, procura que todo vehículo de motor comprado en Puerto Rico sirva para los propósitos por el cual fue adquirido y reúna las condiciones mínimas necesarias para proteger la vida del consumidor y su propiedad.

En lo pertinente, la Regla 26.1 del Reglamento 7159 prohíbe vender vehículos de motor usados sin garantía. Dicha garantía procurará conceder reparación en piezas y mano de obra conforme a la siguiente escala:

    a)  Hasta 36,000 millas – cuatro (4) meses o cuatro mil (4,000) millas, lo que ocurra primero.

    b)  Más de 36,000 millas y hasta 50,000 millas- tres (3) meses o tres mil (3,000) millas, lo que ocurra primero.

    c)  Más de 50,000 millas y hasta 100,000 millas – dos (2) meses o dos mil (2,000) millas, lo que ocurra primero.[10]

Por su parte, la Regla 29.3 del Reglamento 7159 le confiere al DACo la potestad de decretar la resolución del contrato o reducir proporcionalmente el precio de venta, de conformidad con las disposiciones del Código Civil de Puerto Rico "en aquellos casos en que el vendedor, distribuidor autorizado o concesionario, distribuidor de fábrica o fabricante, dentro de los términos de la garantía de fábrica, tuvo oportunidad razonable para reparar uno o más defectos, pero no quiso o no pudo corregirlos". Lo que constituye "oportunidad razonable" se determinará tomando en consideración las circunstancias particulares de cada caso. *Íd*.

---

[10] Regla 26.2 del Reglamento Núm. 7159, *supra.*

Además, la Regla 37 del referido reglamento establece que nada de lo dispuesto en él limita el derecho del consumidor a ejercer cualquier acción que le reconozcan las leyes del Estado Libre Asociado de Puerto Rico, así como las acciones de saneamiento por evicción o vicios ocultos, y la acción redhibitoria que reconoce el Código Civil de Puerto Rico, *supra*, para los contratos de compraventa. *Polanco v. Cacique Motors*, 165 DPR 156, 165 (2005).

**-III-**

Mediante la discusión de su primer señalamiento de error, la parte recurrente nos invita a determinar que la decisión recurrida constituyó un abuso de discreción. Aseverando, que la determinación alcanzada por el DACo es contraria al debido proceso de ley. En particular, señala que no recibió copia de la querella suscrita y que su incomparecencia a la vista administrativa fue producto de un error involuntario en el manejo de su correspondencia. Por tal razón, sostiene que resulta meritorio el relevo del dictamen recurrido.

A los fines de atender este señalamiento de error, hemos efectuado un cuidadoso estudio del legajo y los documentos sometidos por la parte recurrente. Dicho examen, particularmente de la *Notificación de la Querella* **nos permite apreciar que el DACo consignó haber acompañado copia de la querella sometida contra Imperio Auto.** A su vez, cabe destacar que, tal cual arriba consignamos, en dicha notificación la agencia apercibió a la parte recurrente del término en el que debía contestar la querella y que, de no recibirse la contestación dentro del plazo informado, se le anotaría la rebeldía. Más aún, en la misma, también se le avisó que, si de los hechos en la querella o de la resolución que se emita, se determinaba que había incurrido en alguna violación o incumplido con una Ley, Reglamento u Orden, sería multado según las disposiciones reglamentarias establecidas para la naturaleza de la infracción cometida.

Sin embargo, y pese a tan claras advertencias, Imperio Auto no actuó diligentemente en su defensa. Entiéndase, no contestó la querella, ni acudió oportunamente ante el DACo a reclamar que con la notificación recibida no se acompañó copia de la querella. Por el contrario, no es hasta luego de celebrada la vista- **específicamente 113 días luego de habérsele notificado la querella y ya celebrada la vista administrativa en el caso-**, que por primera vez adujo que no le fue provista copia de la querella y, por tanto, surgían defectos en la notificación. Así las cosas, y pese a aceptar que fue debidamente notificada de la vista administrativa, en dicha ocasión alegó que su ausencia se debió a un error involuntario, pues la notificación recibida se confundió con otros documentos y no fue remitida a su representación legal hasta pasada la fecha de la vista.

Ante nos, Imperio Auto reclama faltas al debido proceso de ley en la vertiente procesal; particularmente en la notificación. Así pues, señala que en el presente caso el DACo dio por válida la notificación de la vista administrativa apoyándose exclusivamente en la presunción de que la correspondencia enviada por correo ordinario fue recibida por no haber sido devuelta. No obstante, arguye haber rebatido expresamente dicha presunción al informar oportunamente que no recibió copia de la querella, no tuvo conocimiento de la vista y que su incomparecencia respondió a un error involuntario en el manejo de la correspondencia. Ante este alegado hecho, la parte recurrente reclama que de conformidad con la Regla 49.2 de Procedimiento Civil, *supra,* el DACo debió dejar sin efecto la *Resolución* dictada y celebrar una nueva vista administrativa.

No nos convence los argumentos suscritos por la parte recurrente con el fin de dejar sin efecto la resolución recurrida. Nótese que, si bien alega no haber tenido conocimiento de la vista administrativa, la realidad es que es un hecho admitido por la parte recurrente que en efecto recibió la notificación de la vista. El mal manejo que haya hecho de esta es insuficiente

para rebatir, como alega que hizo, la presunción de que todas las notificaciones remitidas por el DACo por correo ordinario, al no ser devueltas, fueron recibidas.

Por el contrario, más allá de presentar meras alegaciones, Imperio Auto no nos ha colocado en posición para sostener sus argumentos. El mecanismo procesal que se tiene para solicitar el relevo de una sentencia regulado por la Regla 49.2 de Procedimiento Civil, *supra,* es uno discrecional.[11] Los argumentos de la parte recurrente nos parecen insuficientes para comprobar un abuso de discreción por parte del DACo que justifique el relevo del dictamen. En atención a lo anterior, determinamos que el primer error no se cometió.

Por otro lado, Imperio Auto impugna la suficiencia de la prueba en el caso de epígrafe. Expone que el expediente no acredita evidencia sustancial que demuestre los vicios ocultos del vehículo. Ello, debido a que no se demostró la preexistencia del daño mediante peritaje. Por su parte, señala que una mera llamada telefónica no constituye notificación razonable que acredite la negativa de subsanar el daño.

Sabido es que las determinaciones de hecho que realizan las agencias merecen la mayor deferencia. Ello, obedece a que las agencias administrativas tienen la pericia y el conocimiento experto en la materia que le fue delegada. Empero, estamos autorizados a intervenir en las determinaciones de las agencias administrativas de no estar basadas en evidencia sustancial que obre en el expediente. En cuanto a las conclusiones de derecho, estas serán revisadas en todos sus aspectos.

Según esbozamos previamente, el DACo tiene la potestad de decretar la resolución del contrato conforme las disposiciones del Código Civil si tuvo oportunidad razonable para reparar los defectos, más no quiso o no pudo repararlos. *Polanco v. Cacique Motors*, supra. En

---

[11] *Vázquez v. López*, 160 DPR 714, 725 (2003).

su *Resolución,* el DACo consignó que la querella de epígrafe fue presentada debido a la negativa de Imperio Auto en resolver la situación. Conforme surge de las aludidas determinaciones de hechos, la agencia administrativa tuvo ante sí un diagnóstico que acreditaba las deficiencias que adolecía el vehículo, ascendentes a $4,399.79. Por otro lado, surge del dictamen, que la agencia administrativa le otorgó entera credibilidad a la prueba testifical vertida por el señor Santini Aponte, quien manifestó que adquirió el vehículo luego de que la parte recurrente prometiera que el mismo se encontraba en "óptimas condiciones". Igualmente, aseguró haberse comunicado con el vendedor del concesionario, cinco (5) días luego de la adquisición del bien, y este se negó a resolverle porque el vehículo fue vendido sin garantía. Debido a que la parte recurrente no impugnó la apreciación de la prueba efectuada por el Juez Administrativo, damos por cierto dichas expresiones.

En el presente caso, la evidencia aquilatada por la agencia administrativa reveló que el bien vendido no figuraba las cualidades prometidas y que, en su defecto, las fallas encontradas disminuyeron la aptitud para el uso convenido. Además, cabe destacar, que el señor Santini Aponte confió en la buena fe del concesionario, quien aseguró que el vehículo se encontraba en óptimas condiciones. Sin embargo, el recurrido se vio privado del uso y disfrute del bien una vez obtuvo su posesión. Es importante resaltar, que el expediente no solamente demuestra que la parte recurrente le denegó al recurrido la reparación del vehículo, sino que le negó su derecho de garantía desde el momento en que adquirió el bien mueble.

A la luz de las circunstancias del caso, la parte recurrente tuvo oportunidad razonable para reparar el daño del vehículo cuando el recurrido les informó de los defectos de este, más, sin embargo, conforme fue creído por el DACo, se negó a resolver la situación. Siendo ello así, y

conforme la jurisprudencia antes citada, el DACo tenía la potestad de decretar la resolución del contrato suscrito por las partes.

Finalmente, nos corresponde finiquitar si el resarcimiento en daños emocionales otorgado a favor del recurrido fue sustentado por la totalidad del expediente administrativo.

Un cuidadoso estudio de la determinación recurrida nos permite apreciar que la rescisión determinada en el caso descansó en la credibilidad que el testimonio de la recurrida le mereció al Juez Administrativo. Así surge de las determinaciones de hechos en la *Resolución* cuando lee de la siguiente forma:

> x) El querellante declaró que toda esta situación le ha afectado en su vida personal, que casi no duerme pensando en toda esta situación con el vehículo, que él siempre ha actuado de buena fe y el concesionario nunca lo llamó, ni le dieron importancia, a pesar de ser una persona mayor.

> y) El querellante declaró que sufrió un ataque al corazón y que toda esta situación lo tiene mal y teme que le afecte más su salud. Que toda esta situación ha sido caótica para él.

Como arriba establecimos, es claro que la determinación recurrida descansó exclusivamente en la credibilidad que el testimonio le mereció al juzgador de hechos. Siendo ello así, según hace constar en su parte dispositiva, la adjudicación en daños resulta una compensación por molestias y contrariedades producto de la negligencia de Imperio Auto. Por ello, el foro adjudicador ejerció su facultad estatutaria en consonancia con lo dispuesto en *Santiago v. Sears*, 102 DPR 515 (1974). La citada jurisprudencia, dispone que, ante la existencia de daños, la violación de un contrato bilateral da paso a una acción extracontractual, según regulado en nuestro ordenamiento civilista.

En el caso de autos, la prueba revela que la parte recurrente incumplió su deber de vender el bien prometido libre de defectos, según convenido y, posteriormente, reparar la falta. Cabe señalar, que el error del empleado, quien negó el derecho de garantía y reparación, resulta una

negligencia imputable al patrono como parte recurrente. Al así proceder, el incumplimiento contractual provocó daños emocionales al recurrido, según acreditados por el foro adjudicador. Al igual, no encontramos que la cuantía conferida por el DACo resultara ser un abuso de discreción, por lo que nos abstenemos de inmiscuirnos en su determinación.

Ante ello, estimamos que el DACo actuó conforme a derecho, por lo que sostenemos la decisión recurrida.

**-IV-**

Por las razones antes dadas y según adelantamos, **confirmamos** la determinación administrativa.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones